ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **JOSÉ O. RODRÍGUEZ SANTIAGO**<br><br>Peticionario<br><br>v.<br><br>**THOMPSON CONSTRUCTION GROUP**<br><br>Recurrido | TA2026CE00386 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.: **PO2025CV02304**<br><br>Sobre: Despido Injustificado (Ley Núm. 80) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 28 de abril de 2026.

Comparece ante este foro revisor, Thompson Construction Group, Inc. (en adelante, "Thompson Construction" o "parte peticionaria") y nos solicita que revoquemos la *Resolución* emitida el 18 de marzo de 2026 por el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* la solicitud de sentencia sumaria presentada por Thompson Construction.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del auto de *certiorari* solicitado.

**I.**

Surge del expediente que, el 18 de agosto de 2025, el señor José O. Rodríguez Santiago ("señor Rodríguez Santiago" o "parte recurrida") instó una *Querella* sobre despido injustificado contra Thompson Construction, acogiéndose al procedimiento sumario de la Ley Núm. 2, *infra*. En esencia, alegó que trabajó para la compañía querellada hasta el 27 de junio de 2025, cuando fue despedido como

resultado de una reorganización y cierre de almacén de la empresa. Añadió que, posterior a su despido, Thompson Construction realizaba las mismas operaciones que supuestamente iban a cesar y mantuvo funciones sustancialmente iguales a las que éste realizaba.

Por lo anterior, el señor Rodríguez Santiago sostuvo que los motivos de su despido no constituyeron justa causa, conforme al Artículo 2 de la Ley Núm. 80, porque no se trató de un cierre real, ni de una reorganización genuina que hiciera indispensable la terminación del empleo. A su vez, adujo que la compañía tampoco cumplió con los criterios de retención de personal requeridos por ley, tales como antigüedad y eficiencia, al momento de determinar que sería cesanteado. Solicitó al TPI que decretara que su despido fue injustificado, ordenara a Thompson Construction el pago de $9,435.63 por concepto de mesada y $1,415.34 por concepto del 15% de honorarios de abogado.

Oportunamente, el 9 de septiembre de 2025, Thompson Construction presentó su *Contestación a la Querella*. En esta, negó las alegaciones en su contra y planteó que  el señor Rodríguez Santiago carecía de reclamación alguna al amparo de la Ley Núm. 80. Puntualizó que el despido fue con justa causa como parte de una eliminación de puestos que respondió a que dejó de operar su almacén como parte de una reorganización *bona fide*.

Luego de varios trámites procesales, el 5 de febrero de 2026, Thompson Construction presentó una *Moción de Sentencia Sumaria*. En síntesis, arguyó que procedía resolver el pleito mediante dicho mecanismo y desestimar la querella en su totalidad. Señaló que no existía controversia sobre el hecho de que, por razones de negocio, para mejorar su competitividad y productividad, y debido a las pérdidas económicas sostenidas en la operación de Puerto Rico, tuvo que despedir a 77 empleados en entre los años 2024 y 2025.

En esa dirección, la empresa razonó que podía modificar su forma de hacer negocios mediante una reorganización y reducción de personal con el fin de optimizar sus recursos y aumentar su competitividad y productividad, así como detener las pérdidas económicas, incluyendo eliminar plazas y reducir gastos, sin violentar las disposiciones de justa causa de la Ley Núm. 80. Añadió que, al tratarse de una reorganización empresarial, no tenía que demostrar que los despidos en Puerto Rico respondieron a problemas económicos, sino que, en efecto, realizó una reorganización y reducción de personal de buena fe, y que, como parte de ese plan, el señor Rodríguez Santiago fue despedido. Adujo que, basado en la evidencia admisible recopilada en el descubrimiento de prueba, el señor Rodríguez Santiago no cumplió con su obligación de probar, por preponderancia de la prueba, que su despido fue sin justa causa.[1] El señor Rodríguez Santiago no presentó oposición a la solicitud de sentencia sumaria.[2]

El 18 de marzo de 2026, notificada al día siguiente, el foro primario emitió la *Resolución* aquí impugnada. Mediante la referida determinación, concluyó que la sentencia sumaria no era la alternativa procesal apropiada en este caso. En particular, expuso que del expediente electrónico no surgía cuál fue el plan de reorganización de Thompson Construction, si alguno, que llevara al despido del señor Rodríguez Santiago. Ante ello, determinó que el patrono no acompañó evidencia acreditativa del plan de reorganización implantado, así como su utilidad y cómo dicho plan

---

[1] Como evidencia acreditativa de la existencia y propósito del plan de reorganización implantado, y las pérdidas económicas sostenidas, Thompson Construction anejó a su solicitud de sentencia sumaria los siguientes documentos: Transcripción de la deposición del señor Rodríguez Santiago del 19 de noviembre de 2025, Documento *New Hire/Rehire*, *sworn statements* de Curtis Hutto y Jeremy Lane, vicepresidente y principal oficial financiero y vicepresidente de recursos humanos de Thompson Construction con traducción certificada, Carta de 27 de junio de 2025 notificando terminación de empleo y Documento *Net Profit/Loss by Year*.

[2] Mediante *Orden* del 8 de febrero de 2026, el TPI le concedió 20 días para ello. El señor Rodríguez Santiago solicitó un término adicional para oponerse y el 12 de marzo de 2026, el foro *a quo* le otorgó un término final de cinco (5) días.

*bona fide* justificó el despido del señor Rodríguez Santiago. Añadió que para ello era necesario que el patrono probara, mediante evidencia incontrovertida, que la cesantía no fue producto de un mero capricho o una arbitrariedad de su parte, sino que respondió a una reorganización motivada por consideraciones de índole económica en función de la disminución en volumen de sus ventas o ganancias.[3]

Por otro lado, el TPI concluyó lo siguiente:

> [E]ntendemos que existe controversia sobre si el patrono tomó en consideración el criterio de antigüedad dentro de la clasificación ocupacional al momento de realizar el despido de la parte querellante. De la documentación presentada no se puede establecer si, en efecto, el patrono cumplió con su deber de retener con preferencia a los empleados de mayor antigüedad y si dentro de los empleados despedidos el querellante era de menor antigüedad dentro de su clasificación ocupacional que justificara su despido. Véase, Artículo 3 de la Ley Núm. 80, *supra.* En adición, entendemos necesario comparar las funciones del querellante con las funciones de los empleados retenidos a los fines de determinar si el querellado estaba obligado a retener al Sr. José Rodríguez en el empleo. Es decir que, los asuntos relacionados a la cualificación de los empleados, la clasificación de los puestos, las funciones, así como la complejidad de las tareas, del querellante y los empleados retenidos no han quedado claros por lo que ameritan mayor análisis. Por lo tanto, en esta etapa, no podemos concluir si, como consecuencia de la alegada merma económica y reorganización de la empresa, el patrono siguió las disposiciones establecidas en nuestro ordenamiento jurídico con el fin de poder determinar si el despido del querellante José Rodríguez Santiago estuvo justificado y fue uno conforme a derecho o no.

Así las cosas, el foro de instancia enunció que, en estos momentos, no procedía adjudicar la causa de acción de epígrafe mediante el mecanismo de la sentencia sumaria. No obstante, aclaró que no adjudicó si hubo o no un despido injustificado en esta etapa de los procedimientos, toda vez que le corresponderá al señor

---

[3] El foro de instancia determinó que el documento identificado como "*Net Profit/ Loss by Year*" presentado por el patrono para sustentar los hechos propuestos sobre las alegadas pérdidas operacionales no contenía firma alguna y aparentaba haber sido redactado en computadora por la propia empresa. Por ende, luego de examinar su contenido y características, concluyó que dicho documento era inadmisible mediante el mecanismo de la sentencia sumaria.

Rodríguez Santiago pasar prueba, en su día, sobre lo alegado y a Thompson Construction defenderse de la imputación de hecha en su contra. Por consiguiente, el tribunal denegó la solicitud de sentencia sumaria.

En desacuerdo, Thompson Construction comparece ante este foro revisor mediante *Petición de Certiorari*. En este alega que el foro primario cometió los siguientes errores:

> Erró el TPI al determinar que existen controversias de hechos que impiden que se dicte sentencia sumaria a favor de la Peticionaria.

> Erró el TPI al no dictar sentencia sumaria desestimando el caso.

> Erró el TPI al no aplicar la doctrina establecida en *Segarra Rivera v. Int'l Shipping, et al.*, 208 DPR 964 (2022), que establece los criterios adjudicativos aplicables a un despido por reorganización empresarial bona fide.

> Erró el TPI al no aplicar la "Ley de Transformación y Flexibilidad Laboral" y lo resuelto en *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022), a los fines de que el peso de la prueba en casos de despido injustificado recae en el empleado.

Junto a su recurso, Thompson Construction instó un documento intitulado *Moción Urgente en Auxilio de Jurisdicción Solicitando Paralización de los Procedimientos*. Mediante *Resolución* dictada el 30 marzo de 2026, denegamos la antedicha moción y concedimos al señor Rodríguez Santiago un término de 10 días para someter su posición en torno al recurso. En vista de que ello no ocurrió, procedemos a resolver sin el beneficio de su comparecencia.

**II.**

**A.**

La Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80), se adoptó en protección del obrero que ha sido privado injustificadamente de su trabajo, sin la oportunidad de recibir una indemnización para suplir sus necesidades básicas. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR

964 (2022). A esos efectos, la Ley Núm. 80, *supra,* le impone al patrono el pago de una indemnización o mesada, a favor de aquel empleado que es despedido, sin justa causa. *Íd.*

El antedicho cuerpo legal menciona varios escenarios que liberan al patrono de responsabilidad ante un despido. En específico, el Artículo 2 de la Ley Núm. 80, 29 LPRA sec. 185b, enumera varias circunstancias que afectan el buen y normal funcionamiento de una empresa, a saber:

> Se entenderá por justa causa para el despido de un establecimiento:
>
> (a) [...]
> (b) [...]
> (c) [...]
>
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.
>
> (e) **Los cambios tecnológicos o de reorganización**, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
>
> (f) **Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento**.
>
> (Énfasis nuestro).

Las situaciones previstas en los incisos (d), (e) y (f) del Art. 2 giran en torno a las actuaciones del patrono sobre la administración de su negocio, y principalmente ocurren por razones de índole económica que enfrenta su operación diaria. *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 984.

Sin embargo, esas seis (6) instancias son sólo ejemplos de escenarios que pueden considerarse justa causa para el despido. *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 930 (2015).

La Ley Núm. 80, *supra,* no pretende ni puede considerar "la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia." *Íd.* Por tanto, "los patronos están en libertad de adoptar los reglamentos y las normas razonables que estimen necesarias para el buen funcionamiento de la empresa y en las que se definan las faltas que, por su gravedad, podrían acarrear el despido como sanción. *Íd.* Por ende, un patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a incrementar las ganancias del negocio, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes para así poder enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración *bona fide. SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414 (2013).

Por otro lado, cuando se trata de un despido de un empleado como parte de una reorganización empresarial (inciso (e)), un patrono queda exento de pagar la indemnización fijada por la Ley Núm. 80. Ahora bien, en ese caso es necesario que tal reorganización sea *bona fide.* No obstante, **para que el patrono pueda justificar el despido al amparo de este inciso debe presentar "evidencia acreditativa del plan de reorganización implantado, así como su utilidad"**. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 985-986, citando a *SLG Zapata-Rivera v. J.F. Montalvo,* supra. Bajo esta causa, la empresa no necesariamente tiene que alegar y probar que tuvo problemas económicos, sino que, en efecto, se realizó una reorganización de buena fe y que, como parte de ese plan, el empleado fue despedido. En resumen, si el despido se debió a una reestructuración, lo que el patrono debe demostrar es que la acción de modificar su manera de hacer negocios se hizo en consideración al buen y normal funcionamiento del establecimiento, lo cual está

arraigado a consideraciones que atañen al manejo de la empresa. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 1001-1003. Además, el Tribunal Supremo de Puerto Rico aclaró que:

> [P]ara demostrar justa causa basta con articular y presentar prueba sobre una razón válida para el despido, como por ejemplo sería la reorganización empresarial de los servicios rendidos al público. En ese sentido, la obligación que impone la Ley Núm. 80, supra, de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o un plan de reestructuración de una forma particular o específica. O sea, basta con que el patrono demuestre que la acción respondió a una decisión gerencial válida a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad, y así tendrá que acreditarlo. Ello, pues el patrono tiene el derecho a hacer los arreglos o cambios que estime necesarios y convenientes para optimizar sus recursos y aumentar las ganancias de la empresa. *Íd.*

En armonía con lo anterior, el juzgador de los hechos **puede otorgarle valor probatorio a las declaraciones juradas presentadas**, como a los testimonios vertidos mediante deposiciones y **la prueba documental que las partes acompañan al someter una moción de sentencia sumaria si estos cumplen con los requisitos establecidos en la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V**. **Ello, pues este tipo de evidencia puede contener hechos que podrían ser admisibles como prueba**, si se basan en conocimiento personal de los declarantes en cuanto a su contenido en relación con la reorganización empresarial. *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 1003. (Énfasis nuestro).

El Tribunal Supremo destacó que no se requiere necesariamente que el patrono experimente una reducción en el volumen de producción, las ventas o las ganancias de la empresa en su conjunto para que se justifique la reorganización. **Un patrono podrá tomar la decisión de reorganizarse por cualquier motivo, siempre y cuando ello constituya una decisión empresarial válida, de utilidad y no un mero capricho**. *Íd.* (Énfasis nuestro).

En cuanto al inciso (f) del Art. 2 de la Ley Núm. 80 (despido por disminución de ganancias)[4], el Tribunal Supremo de Puerto Rico explicó en *SLG Zapata-Rivera v. J.F. Montalvo*, supra, págs. 426-427, que "la situación económica provocada por la baja en la producción, ventas o ganancias en una empresa puede llevar al patrono a tomar medidas necesarias para limitar los gastos tales como disminuir la plantilla laboral" y que no "toda merma en ventas o ganancias se tradu[ce] en justa causa para un despido. Por el contrario, esta aplicará únicamente a aquellas situaciones en las cuales la aludida disminución sea una sustancial al punto que atente contra la continuidad de la empresa". Será deber del patrono presentar prueba acreditativa de "la alegada disminución en la producción, ventas o ganancias". Por igual, deberá establecer un nexo causal entre las circunstancias económicas de la empresa y la necesidad del despido.

**B.**

La *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 del 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.,* según enmendada, provee un trámite especial para atender las querellas relacionadas con las disputas laborales presentadas por empleados u obreros en contra de sus patronos. *León Torres v. Rivera Lebrón*, 204 DPR 20, 31 (2020), citando a *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 265 (2018). El referido estatuto se creó con el fin de establecer un mecanismo procesal de rápida disposición y adjudicación este tipo de controversia. *Slim v. Royal Blue y otros*, 2025 TSPR 133, 217 DPR ___ (2025), citando a *Collazo Muñiz v. Aliss*, 2025 TSPR 22, 215 DPR ___ (2025). El carácter

---

[4] La Ley Núm. 4-2017, mejor conocida como la *Ley de Transformación y Flexibilidad Laboral*, enmendó la Ley Núm. 80, *supra*, para entre otras cosas, ampliar los criterios para llevar a cabo una reorganización o reducción de personal. Ello, con el fin de añadir una nueva circunstancia al inciso (f) que permitiera a la empresa una reducción de empleados con el propósito de aumentar la competitividad o productividad del establecimiento

sumario constituye la médula de esta ley. *Ruiz Camilo v. Trafon Group, Inc.*, supra, pág. 265.

Con el fin de cumplir cabalmente con la intención legislativa de establecer un procedimiento expedito y sumario, los Tribunales deben abstenerse de revisar las resoluciones interlocutorias que se dicten durante dicho proceso. En consecuencia, la parte que pretenda impugnarlas deberá esperar hasta la sentencia final e instar contra ella el recurso pertinente a base del alegado error cometido. En *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 498 (1999), nuestro Tribunal Supremo concluyó que la revisión de resoluciones interlocutorias resulta contraria al carácter sumario del procedimiento laboral de la Ley Núm. 2. Así, se reafirmó el deber de los tribunales de evitar que se desvirtúe la naturaleza sumaria del trámite y fomentar la intención del legislador en propiciar la rápida disposición de las reclamaciones laborales. *Collazo Muñiz v. Aliss*, supra.

Ahora bien, esta norma de autolimitación no es absoluta, pues quedaron exceptuadas de dicha prohibición aquellas resoluciones dictadas por un tribunal sin jurisdicción y aquellos casos extremos en los cuales los fines de la justicia así lo requieran. *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, pág. 498. En específico, el Tribunal Supremo de Puerto Rico dispuso que procede la revisión inmediata cuando hacerlo disponga del caso en forma definitiva o cuando tenga el efecto de evitar una grave injusticia. *Íd.*

**C.**

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Banco Popular de Puerto*

*Rico v. Cable Media of Puerto Rico, Inc. y otro*, res. el 7 de enero de 2025, 2025 TSPR 1; *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[5] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en

---

[5] Véase, además: *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y, por tanto, es necesario celebrar juicio, será obligatorio que el

Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4.

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de

sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, págs. 118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

**D.**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *León v. Rest. El Tropical*, 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019).[6]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones

---

[6] El recurso de *certiorari,* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra.*

enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar, tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

**III.**

En primer orden, la parte peticionaria aduce que el caso de referencia, que se tramita bajo el procedimiento sumario de la Ley Núm. 2, es uno en que los fines de la justicia exigen que se expida el auto de *certiorari.* Precisa que existe conflicto entre decisiones de salas del TPI con los mismos hechos. Razona que procede la intervención de este Foro para revocar la determinación impugnada porque se emitió en contravención del derecho vigente, específicamente la doctrina establecida en *Segarra Rivera v. Int'l Shipping, et al.,* supra. Añade que, conforme a dicha doctrina, solo basta con que el patrono demuestre que la acción de despido respondió a una decisión gerencial válida a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad. En esa dirección, esgrime que la expedición del recurso evitaría la confusión aún existente relacionada a la evaluación de la evidencia en casos en que se alega una reorganización *bona fide* de una empresa.

En síntesis, la parte peticionaria aduce que el foro primario erró al no aplicar el derecho vigente y al no determinar que todos los hechos que propuso en su solicitud de sentencia sumaria quedaron incontrovertidos y procedía, como cuestión de derecho, desestimar la querella. Es su contención que sometió evidencia incontrovertida sobre que la reorganización (y posterior terminación del empleo de la parte recurrida) respondió a una decisión gerencial válida a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad. Resalta que la doctrina establecida en *Segarra Rivera v. Int'l Shipping, et al.,* supra, no requiere que el patrono presente prueba sobre el plan de reorganización.

Cónsono con lo anterior, arguye que todos los hechos materiales que propuso en su petitorio estuvieron debidamente sustentados o apoyados en testimonio, declaraciones juradas y

documentos que no fueron controvertidos por la parte recurrida, según lo requiere el ordenamiento procesal. En cuanto al Exhibit 6 ("*Net Profit/Loss by Year*") al que hizo referencia la juzgadora de los hechos, argumenta que este sí es admisible, y que, de no serlo, su calidad evidenciaria es irrelevante para la solución sumaria de la querella.

Así las cosas, nos corresponde analizar si la prueba que incluyó la parte peticionaria junto a su petición de sentencia sumaria en apoyo a sus alegaciones cumplió con el *quantum* requerido para que la querella se desestimara en esta etapa de los procedimientos. En particular, ponderaremos si el patrono justificó el despido con una razón válida bajo el inciso (e) del Art. 2 de la Ley Núm. 80.

Tras examinar detenidamente los hechos particulares del caso, colegimos que no procede apartarnos de la norma general de autolimitación en el ejercicio de la función revisora que se nos requiere en pleitos de esta índole. Recordemos que la expedición del auto de *certiorari* es un remedio extraordinario y discrecional que solo procede cuando se cumplen los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

La determinación sobre que la parte peticionaria deberá poner en posición al Tribunal de Primera Instancia de la alegada merma o pérdida económica de la empresa porque la documentación anejada a la solicitud de sentencia sumaria no le permitió conocer de dónde proviene la información allí presentada nos parece sensata. Nótese que la doctrina aplicable esboza que, para justificar la terminación de un empleo por la implantación de un plan de restructuración, el patrono tiene que acreditar que dicha acción fue una decisión válida y no producto del mero capricho.

A juicio del TPI, la prueba sometida en ese momento no fue suficiente para adjudicar la causa de acción de epígrafe mediante el

mecanismo de la sentencia sumaria. No obstante, aclaró que no se estaba adjudicando si hubo o no un despido injustificado en esa etapa de los procedimientos, toda vez que le corresponderá a la parte recurrida pasar prueba, en su día, sobre lo alegado y a la parte peticionaria defenderse de la imputación de hecha en su contra.

Debido a que estamos ante una *Resolución* interlocutoria dentro de una causa de acción al amparo del procedimiento sumario de la Ley Núm. 2, *supra*, y que ninguna de las excepciones contempladas se encuentra presente en el caso de autos, denegamos la expedición del auto de *certiorari* solicitado. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Una vez el Tribunal de Primera Instancia adjudique en su totalidad la causa de epígrafe, la parte que resulte adversamente afectada por la sentencia final podrá comparecer ante este Foro y solicitar la revisión, tanto de dicha determinación, como de las resoluciones interlocutorias emitidas durante el trámite del caso, si así lo estima procedente.

**IV.**

Por los fundamentos antes esbozados, denegamos expedir el auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones